IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:14-CV-348-F

| | |
|---|---|
| LESLIE HOLDEN, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| RALEIGH RESTAURANT CONCEPTS, ) | |
| INC., ) | |
| Defendant. ) | |

This matter is before the court on Plaintiff's Leslie Holden's Motion for Reconsideration [DE-23], asking the court to reconsider its Order of April 3, 2015 [DE-22] in which the court required Holden to withdraw her demand for arbitration from the American Arbitration Association ("AAA"). The matter has been fully briefed and is now ripe for ruling. For the reasons stated herein, the motion is ALLOWED.

I. **PROCEDURAL AND FACTUAL HISTORY**

The court adopts this history from its Order of April 3, 2015 [DE-22]. Holden filed the instant collective and class action on June 13, 2014, alleging that Raleigh Restaurant Concepts, Inc. ("RRC"), violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-25.1, *et seq.* Compl. [DE-1] ¶ 1. In an order filed on November 20, 2014 [DE-16], the court allowed, in part, RRC's Motion to Dismiss and/or to Stay and to Compel Arbitration and Motion to Dismiss All Class and Collective Action Allegations [DE-7]. To the extent that RRC sought to compel arbitration, the court allowed its motion and stayed the proceeding pending arbitration. *See* November 20, 2014, Order [DE-16] at 7. The court, however, denied without prejudice RCC's motion to dismiss

Holden's class and collective action allegations based on the class and collective action waivers that are included in the parties' arbitration agreement, ruling that the issue of whether Holden may properly bring class or collective action claims should be determined by the arbitrator. *Id.* at 8. The court further directed the parties to submit a status report of the arbitration proceedings no later than 90 days from the filing date of the order, and every 90 days thereafter, until such proceedings are concluded. *Id.* at 9.

On February 19, 2015, Holden submitted the first status report [DE-17], stating that she had not filed an arbitration demand, but instead filed a National Labor Relations Board ("NLRB") charge against RRC, and attached the charge [DE-18]. She stated that "[u]pon conclusion of the NLRB investigation, the Plaintiff will file her arbitration demand." *See* Status Report Regarding Arbitration [DE-17] at 1. The NLRB Charge states:

> Since on or about August 12, 2014, the above-referenced Employer has sought to enforce a waiver of the right: (1) to mediate/arbitrate employment FLSA disputes on a collective basis; and (2) to join a collective action pursuant to the FLSA, 29 U.S.C. 216(b), against Leslie Holden, in violation of the NLRB decision D.R. Horton, 357 NLRB No. 184 (January 2012), and Murphy Oil USA, Inc., 361 NLRB No. 72 (October 2014).
> The Employer has sought to enforce a waiver of Ms. Holden's NLRA right to pursue collectively pursue [sic] litigation in all forums judicial and arbitral.

NLRB Charge [DE-18].

The court found that Holden was seemingly ignoring its earlier ruling that the issue of whether she may properly bring a class or collective action should be determined by an arbitrator, and instead seeks to have the NLRB determine the issue. The court accordingly ordered Holden to show cause why she should not be held in civil contempt, and gave her until March 24, 2015, to file a written response. The court warned that if Holden failed to (1) show that she was in compliance with the November 20, 2014 Order or (2) justify her non-compliance

2

with the November 20, 2014 Order, the court would issue an order holding her in civil contempt and imposing sanctions to induce her compliance.

Holden responded and stated, in part, that since the court's Order to Show Cause, she had filed a demand with the AAA. She paid the $200 filing fee, but RRC refused to pay the remainder of the $3,350 fee. RRC responded [DE-21] and contended that Holden had violated the arbitration provision of their contract by filing an arbitration demand with the AAA without first conferring with RRC to attempt to select a neutral arbitrator.

The court found that, in filing the demand with the AAA, Holden had shown why she should not be held in civil contempt for failure to abide by the court's November 20, 2014 Order. However, the court agreed with RRC that Holden should have consulted with RRC regarding the selection of an arbitrator. The court then ordered Holden to withdraw her Demand for Arbitration filed with the AAA and confer with RRC in an effort to select an arbitrator. The court additionally expressed no opinion as to who should pay the filing fees for arbitration.

The relevant portions of the arbitration provision read as follows:

> **ANY AND ALL CONTROVERSIES BETWEEN THE ENTERTAINER AND CLUB . . . <u>SHALL BE EXCLUSIVELY DECIDED BY BINDING ARBITRATION</u> HELD PURSUANT TO AND IN ACCORDANCE WITH THE FEDERAL ARBITRATION ACT ("FAA"), AND SHALL BE DECIDED BY A SINGLE NEUTRAL ARBITRATOR AGREED UPON BY THE PARTIES . . . .**
> In the event that the parties are unable to mutually agree upon an arbitrator, either party may apply to the [AAA] for the selection of an arbitrator. Any arbitration shall be conducted consistent with the rules of the AAA, except as expressly or implicitly modified by this agreement. . . .
> . . . For any claims based upon an employment related statute, such as the Fair Labor Standards Act or other similar federal or state statute, the club shall pay all fees charged by the AAA and the arbitrator that the **Entertainer** <u>would not</u> have had to pay in a court proceeding.

3

*See* Lease [DE-10-1] ¶ 21. Holden contends that this provision (1) requires that the defendant pay for the cost of arbitration, and (2) mandates that the parties use the AAA as the exclusive arbitration forum, precluding use of a private arbitrator.

## II. LEGAL STANDARD

Generally, motions for reconsideration are only allowed at the discretion of the court and only under certain circumstances. *See Ga.-Pac. Consumer Prods. v. Von Drehle Corp.*, 815 F. Supp. 2d 927, 929 (E.D.N.C. 2011). Those circumstances are typically (1) to correct manifest errors of law or fact or (2) to consider newly discovered evidence. *See id.* Motions to reconsider "are improper if they serve merely to ask the Court 'to rethink what the Court had already thought through-rightly or wrongly.'" *See id.* (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)). This also typically requires rejecting new arguments because "[h]indsight being perfect, any lawyer can construct a new argument to support a position previously rejected by the court, especially once the court has spelled out its reasoning in an order." *See Wiseman v. First Citizens Bank & Tr. Co.*, 215 F.R.D. 507, 509 (W.D.N.C. 2003) (quoting *Potter v. Potter*, 199 F.R.D. 550, 553 (D. Md. 2001)).

## III. DISCUSSION

The court allows the Motion for Reconsideration [DE-23] because the court entered its previous order without the parties having fully briefed the legal matters at issue. Holden is not, as RRC contends, asking for the court to re-evaluate its decision. Instead, Holden is asking to fully brief and address the question of what the arbitration provision requires. The court did not have the benefit of full briefing when issuing its previous order. The court acknowledges its error and now rectifies it.

### a. Courts construe ambiguous arbitration provisions against the drafter.

Where a contract's terms are clear and unambiguous, courts construe those terms according to their plain meaning. *See Cent. Tel. Co. of Va. v. Sprint Comms. Co. of Va., Inc.*, 715 F.3d 501, 517 (4th Cir. 2013). However, under North Carolina law, where contractual provisions are ambiguous, those ambiguities "are to be strictly construed against the drafting party." *Stewart v. U.S. Corrections Corp.*, No. 1:98CV173-C, 1999 WL 33321101, at *2 (W.D.N.C. Mar. 17, 1999) (citing *Station Assocs., Inc. v. Dare Cty.*, 501 S.E.2d 705, 708 (N.C. Ct. App. 1998), *rev'd on other grounds*, 513 S.E.2d 789 (N.C. 1999)); *see also Maersk Line, Ltd. v. United States*, 513 F.3d 418, 423 (4th Cir. 2008) ("The basic contract law principle *contra proferentem* counsels that we construe any ambiguities in the contract against its draftsman."). Additionally, courts construe a contract's terms as consistent and not conflicting "unless no other reasonable interpretation is possible." *See Ray D. Lowder, Inc. v. N.C. State Highway Comm'n*, 217 S.E.2d 682, 693 (N.C. Ct. App. 1975). In this case, any ambiguous terms will be construed against RRC, the drafter of the agreement.

### b. *Expressio unius est exclusio alterius*.

The parties dispute whether the arbitration provision allows for selection of a private arbitrator or whether the AAA is the only forum available for arbitration. RRC argues for the former and Holden for the latter. In support, Holden cites *Smith Barney, Inc. v. Critical Health Systems of North Carolina, Inc. of Raleigh, North Carolina*, 212 F.3d 858 (4th Cir. 2000). In *Smith Barney*, the contract did not state a particular forum from which to select an arbitrator, but named only the rules to be used, specifically those of "the NASD, or the Boards of Directors of the NYSE or the American Stock Exchange, Inc." *Id.* at 861. The defendant argued that, because

5

of the absence of a particular mandated forum, the parties could still arbitrate before the AAA. *See id.* The court disagreed:

> The agreement specifies that arbitration may take place according to the rules of three [self-regulatory organizations]. It does not mention any other organization and does not specifically provide for arbitration before the AAA. Under the principle of *expressio unius est exclusio alterius*, arbitration is limited to the three prescribed fora.

*Id.*

Holden argues that, because the arbitration clause in the present dispute specifies that the AAA rules are to be applied without otherwise specifying an arbitration forum, the AAA is to be the exclusive arbitration forum.[1] RRC argues that the arbitration provision is clear—the parties can agree to any arbitrator, and only if they cannot agree must they then turn to the AAA. While some courts have distinguished *Smith Barney* with respect to arbitration provisions similar to the one in the parties' agreement, *see, e.g.*, *Deeds v. Regence Blueshield of Idaho*, 141 P. 3d 1079, 1082 (Idaho 2006) ("Unlike the SROs, arbitration 'in accordance with the applicable rules of the AAA' is not dependent on the AAA overseeing the arbitration."), the court believes that the principle is still helpful here where the agreement is ambiguous.

### c. The AAA is the only forum mandated by the arbitration provision.

Here, the arbitration provision says that the dispute between parties "shall be decided by a single neutral arbitrator agreed upon by the parties." *See* Lease [DE-10-1] ¶ 21.A. Otherwise, if the parties are unable to agree upon an arbitrator, "either party may apply to the [AAA] for the selection of an arbitrator." *Id.* The provision also states that the arbitration "shall be conducted consistent with the rules of the AAA," and requires that RRC "shall pay all fees charged by the AAA and the arbitrator that [Holden] would not have had to pay in a court proceeding." *Id.*

---

[1] Contrary to RRC's contention, Holden is not raising a new legal theory. Indeed, she never had the chance to raise a legal theory during the extremely limited briefing of the court's previous order [DE-22].

6

The court finds that the arbitration provision is ambiguous as drafted. When construed against the drafter, RRC, the provision must be read as mandating the AAA as the only available arbitration forum.

The arbitration provision does not explicitly state that any arbitrator can be selected, but does explicitly permit the parties to turn to the AAA for selection of an arbitrator if there is a disagreement. Additionally, the arbitration provision not only requires that the arbitration be conducted according to the rules of the AAA, but also *presumes* that RRC will pay the AAA and the arbitrator. While the arbitration provision does not explicitly preclude selection of a private arbitrator, multiple clauses indicate that the AAA is the exclusive arbitration forum. Because ambiguities are to be construed against RRC, the court finds that the AAA is the exclusive arbitration forum. The ambiguities noted above also weigh in favor of applying the principle of *expressio unius est exclusio alterius* in the present case to resolve those ambiguities. Application of that principle leads to the same result: the AAA is the exclusive arbitration forum.

Given the foregoing, the court holds that the parties should first attempt to mutually agree on the selection of an AAA arbitrator. Failing that, the parties may apply to the AAA to select an arbitrator for them. RRC must pay for any fees charged by the AAA and the arbitrator that Holden would not have had to pay in a court proceeding.[2]

## IV. CONCLUSION

Holden's Motion for Reconsideration [DE-23] is ALLOWED. The parties are DIRECTED to consult regarding the selection of an AAA arbitrator. If they are unable to reach an agreement, they are to apply to the AAA for selection of an arbitrator. RRC is ORDERED to

---

[2] While Holden should first have consulted with RRC regarding the selection of an arbitrator, to call her actions "unconscionable" is hyperbole. The agreement was vague, and Holden's initial application to the AAA should not be cause for the heavy-handed and unnecessary punishment requested by RRC.

pay any fees charged by the AAA and the arbitrator that Holden would not have had to pay in a court proceeding.

SO ORDERED.

This the 28th day of October, 2015.

                                                             *James C. Fox*
                                                             James C. Fox
                                                             Senior United States District Judge